1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LENNY R. SCHWARTZ, JR.,

             Plaintiff,

    v.

SNOHOMISH COUNTY, et al.,

             Defendants.

No. C05-732P

ORDER ON DEFENDANTS'
MOTION TO DISMISS

This matter comes before the Court on the Snohomish County Defendants' Unenumerated 12(b) Motion to Dismiss the Amended Complaint for Failure to Exhaust Administrative Grievance Procedures and Motion to Dismiss Pursuant to FRCP 12(b)(6).  (Dkt. No. 45).  Having reviewed the papers and pleadings submitted by the parties, the Court hereby GRANTS in part and DENIES in part Defendants' motion to dismiss.

The Court grants Defendants' motion to the extent it seeks dismissal of:  (1) Plaintiff's claims against individual judges and prosecuting attorneys; (2) Plaintiff's claims for declaratory relief; (3) Plaintiff's state-law tort claims; (4) Plaintiff's challenge to the constitutionality of RCW 43.43.754; (5) Plaintiff's claims against Aaron Reardon, Steve Thompson, Chris Bly, and Nancy Gibson to the extent they are sued in their individual capacities.  However, Plaintiff is granted leave to amend his complaint

ORDER - 1

solely to the extent that Plaintiff seeks to bring claims against Defendants Reardon, Thompson, Bly, and Gibson in their individual capacities.  Any amended complaint must be filed and served no later than 30 days of the date of this order.

The Court denies Defendants' motion to the extent it seeks dismissal of:  (1) claims for unconstitutional conditions of confinement; and (2) claims against county officials in their official capacities.

The parties are directed to submit a joint status report to the Court no later than March 28, 2006.  The joint status report must address the issues listed in the Court's original order directing the parties to submit this report.  See Dkt. No. 5.  No further extensions to the filing of the joint status report will be granted.

**Background**

Plaintiff Lenny Schwartz is proceeding pro se and in forma pauperis in this matter.  Plaintiff is a former inmate of Snohomish County Corrections (SCC).  Plaintiff initially sought to maintain this case as a class action.  However, the Court previously dismissed the class action allegations because Plaintiff cannot maintain a class action as a pro se litigant.   After the class allegations were dismissed, Plaintiff filed a second amended complaint limited to his individual claims.  Defendants now move to dismiss various claims asserted in Plaintiff's second amended complaint (SAC).

The SAC names 26 defendants, including Snohomish County, SCC, the county superior court, the county office of public defense, the county public defender association, the current and former county prosecuting attorneys, and a number of individuals associated with these entities, including 14 individual judges.  Plaintiff alleges unconstitutional conditions of confinement at SCC, unlawful searches through the collection biological samples, and a broad conspiracy between 1996 and 2004 allegedly involving Snohomish County judges, prosecutors, public defenders, and the jail.  Plaintiff states that he is bringing federal claims under 42 U.S.C. §§ 1983, 1985, and 1986 and alleges violations of his constitutional rights under the First, Fourth, Fifth, Eighth, and Fourteenth

ORDER - 2

1   Amendments.  Plaintiff also alleges various state-law tort claims.  Plaintiff seeks a declaratory

2   judgment, as well as compensatory and punitive damages.

3        In a prior action filed in this Court in 2003, Plaintiff attempted to bring similar claims against

4   many of the same defendants named in the SAC.  See Schwartz v. Snohomish County, C03-3431C.

5   However, the prior action was dismissed without prejudice for failure to effect service of process in a

6   timely manner.

7                                    **Analysis**

8        In considering a motion to dismiss, "[a]ll allegations of material fact are taken as true and

9   construed in the light most favorable to the nonmoving party."  Sprewell v. Golden State Warriors,

10  266 F.3d 979, 988 (9th Cir. 2001).  However, the Court is not "required to accept as true allegations

11  that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  Id.  Because

12  Plaintiff is proceeding pro se in this matter, his pleadings are construed liberally.  Eldridge v. Block,

13  832 F.2d 1132, 1137 (9th Cir. 1987).

14  1.    Failure to Exhaust Administrative Remedies

15       First, Defendants argue that Plaintiff's claims regarding unconstitutional conditions of

16  confinement must be dismissed because Plaintiff did not exhaust his administrative remedies regarding

17  such claims.  Defendants base this argument on the Prison Litigation Reform Act (PLRA), 42 U.S.C. §

18  1997e, which provides in relevant part:

19          No action shall be brought with respect to prison conditions under section 1983 of this title, or
            any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility
20          until such administrative remedies as are available are exhausted.

21  42 U.S.C. § 1997e(a).  Defendants have introduced evidence that Plaintiff did not exhaust

22  administrative remedies for his claims regarding prison conditions while he was an inmate at SCC.

23       In response, Plaintiff notes that the exhaustion requirements of the PLRA are directed at

24  actions brought "by a prisoner confined" in a correctional facility.  Plaintiff argues that these

25  requirements do not apply here because he filed this action after he was released from prison.

ORDER - 3

1     Most courts that have considered this issue have adopted Plaintiff's position.  In <u>Page v.</u>

2 <u>Torrey</u>, 201 F.3d 1136, 1140 (9th Cir. 2000), the Ninth Circuit indicated that "only individuals who, at

3 the time they seek to file their civil actions, are detained as a result of being accused of, convicted of,

4 or sentences for criminal offenses are 'prisoners' within the definition of 42 U.S.C. § 1997e."  Other

5 circuits have reached similar conclusions.  <u>See, e.g.</u>, <u>Norton v. City of Marietta</u>, 432 F.3d 1145, 1150

6 (10th Cir. 2005) ("a plaintiff who seeks to bring suit about prison life after he has been released and is

7 no longer a prisoner does not have to satisfy the PLRA's exhaustion requirements before bringing

8 suit"); <u>Nerness v. Johnson</u>, 401 F.3d 874, 876 (8th Cir. 2005) (same); <u>Ahmed v. Dragovich</u>, 297 F.3d

9 201, 210 and n.10 (3d Cir. 2002) (same, and noting "every court of appeals to have considered the

10 issue has held that the PLRA does not apply to actions filed by former prisoners"); <u>Greig v. Goord</u>,

11 169 F.3d 165, 167 (2d Cir. 1999) (same).

12     Defendants argue that the Ninth Circuit's decision in <u>Page</u> has been superceded by two more

13 recent Supreme Court decisions:  <u>Booth v. Churner</u>, 532 U.S. 731 (2001), and <u>Porter v. Nussle</u>, 534

14 U.S. 516 (2002).  However, neither <u>Booth</u> nor <u>Porter</u> considered whether the PLRA's exhaustion

15 requirements applied to suits filed by former inmates.  Instead, both cases involved inmates who were

16 incarcerated at the time they filed suit.

17     To be sure, a few district courts have held that the Supreme Court's decisions in <u>Booth</u> and

18 <u>Porter</u> require former inmates to exhaust administration remedies before filing suit.  <u>See</u> <u>Morgan v.</u>

19 <u>Maricopa County</u>, 259 F. Supp.2d 985 (D. Ariz. 2003); <u>Mason v. County of San Mateo</u>, 2005 US

20 Dist. LEXIS 1223 (N.D. Cal. Jan. 26, 2005); <u>Reyes v. State</u>, 2005 WL 1459662 (D. Or. June 21,

21 2005).  However, many other district courts have explicitly rejected such arguments.  <u>See</u> <u>Krittenbrink</u>

22 <u>v. Crawford</u>, 313 F. Supp.2d 1043 (D. Nev. 2004); <u>Wilson v. Hampton County</u>, 2005 WL 2877725

23 (D.S.C. Oct. 31, 2005); <u>Black v. Franklin County</u>, 2005 WL 1993445 (E.D. Ky. Aug. 16, 2005);

24 <u>Thomas v. Baca</u>, 2005 WL 697986 (C.D. Cal. March 23, 2005); <u>Canady v. Werholtz</u>, 2004 WL

25 1212050 (D. Kan. June 1, 2004).  More importantly, it appears that every federal court of appeals that

1  has considered this issue has held that the PLRA's exhaustion requirements do not apply to suits

2  brought by former inmates – a body of case law that includes decisions issued after the Supreme

3  Court's rulings in Porter and Booth. See Nerness v. Johnson, 401 F.3d 874 (8th Cir. 2005); Norton v.

4  City of Marietta, 432 F.3d 1145 (10th Cir. 2005); Ahmed v. Dragovich, 297 F.3d 201 (3rd Cir. 2002).

5        Therefore, the Court finds that the PLRA's exhaustion requirements do not apply to Plaintiff's

6  claims because he filed this action after he was released from confinement.  The Court is not

7  persuaded that the Supreme Court's decisions in Porter or Nussle supercede the Ninth Circuit's

8  holding in Page.  As other courts have observed, there are also logical reasons to require confined

9  prisoners, but not former prisoners, to exhaust administrative remedies before filing suits regarding

10  prison conditions.  As the Tenth Circuit recently noted:

11        [D]istinguishing between current and former prisoners "is compatible with the purpose of the
        PLRA.  Prisoners often have an abundance of time, while facing a restricted number of
12        enjoyable activities with which to pass the time other than filing suits."  Once a prisoner is
        released, however, "[o]pportunity costs of litigation rise . . . , diminishing the need for special
13        precautions against weak suits."

14  Norton, 432 F.3d at 1150-51 (internal citations omitted).

15        Finally, Defendants suggest that the Ninth Circuit has implicitly overruled its decision in Page.

16  Defendants contend that in Lira v. Herrera, 427 F.3d 1164 (9th Cir. 2005), the Ninth Circuit held that

17  a former inmate could not pursue claims that he had failed to exhaust before filing his lawsuit.

18  Defendants' argument relies on the Ninth Circuit's reference to the plaintiff in Lira as a "former

19  inmate."  Defendants read too much into this offhand reference, which simply appears to mean that the

20  plaintiff was a former inmate by the time the Ninth Circuit heard his appeal.  The trial court's ruling in

21  the case makes it clear the plaintiff was in fact incarcerated at the time he filed his lawsuit.  See Lira v.

22  Director of Corrections, 2002 WL 1034043 at * 1 (N.D. Cal. May 17, 2002) (noting that plaintiff is

23  "an inmate currently housed at Pelican Bay State Prison").  As a result, the exhaustion requirements of

24  the PLRA applied to the Lira plaintiff, since he filed the suit while still incarcerated.

25

1    Therefore, Defendants' motion is denied to the extent it seeks dismissal of Plaintiff's claims for

2    failure to exhaust administrative remedies under the PLRA.

3    2.    Judicial Immunity

4        Defendants next seek dismissal of Plaintiff's claims against fourteen Snohomish County

5    Superior Court judges.  Defendants argue that these claims are barred by the doctrine of judicial

6    immunity.

7        Plaintiff's complaint includes the following allegations against the judges:

8    *    "Between 1996 and 2004, the judges, the prosecutors, the jail, the OPD [Office of
         Public Defense], and the SCPDA [Snohomish County Public Defenders Association]
9        conspired together to create and maintain a local justice system that unlawfully
         coerced, extorted and forced those charged with criminal offenses, into waiving
10       substantive statutory and constitutional rights, and ultimately, to plead guilty without a
         jury trial, against the better interests of the accused."  (SAC ¶ 4.1)
11

12   *    "[T]he judges furthered Snohomish County's agenda by failing to uphold – and by
         refusing to scrutinize and reject the ineffective assistance of counsel of the SCPDA; by
13       participating in the setting of artificially high bails and the failure to exonerate bails
         when mandated by law; by approving and permitting in the unlawful practices of the
         prosecutors; and, by participating in the maintenance of the jail's unlawful population,
14       conditions, and practices."  Id. ¶ 4.6

15   *    Along with other defendants, the judges allegedly "knowingly and intentionally created,
         implemented and maintained a system of obstructing and impeding plaintiff, a criminal
16       detainee/prisoner in his ability to exercise his right to access the courts."  Id. ¶ 4.7.
         Plaintiff also alleges that the judges and others "substantially participated in the
17       maintenance of the jail's unlawful legal material access scheme by and through
         administrative acts," such as "[f]acilitating and protecting the scheme by administrative
18       actions and otherwise acts that fall both in and outside the scope of their duties as
         government officials possessing immunity."  Id. ¶ 4.12(c).
19

20       Defendants note that the doctrine of judicial immunity bars most actions against judges.  The

21   Supreme Court has held that judicial immunity from suit is overcome in only two sets of

22   circumstances: (1) "a judge is not immune from liability for nonjudicial actions, i.e., actions not taken

23   in the judge's judicial capacity"; and (2) "a judge is not immune for actions, though judicial in nature,

24   taken in the complete absence of all jurisdiction."  Mireles v. Waco, 502 U.S. 9, 11-12 (1991).

25

ORDER - 6

1    In an apparent attempt to avoid the judicial immunity doctrine, Plaintiff makes conclusory

2    allegations that the judges acted "outside the scope of their duties" and through "administrative acts."

3    However, his allegations against the judges either concern actions taken in their judicial capacity (e.g.,

4    setting or exonerating bail, failing to scrutinize ineffective assistance of counsel) or amount to wholly

5    conclusory allegations that are insufficient to support a claim against the judges.  See, e.g., Lonneker

6    Farms, Inc. v. Klobucher, 804 F.2d 1096, 1097 (9th Cir. 1986) (conclusory allegations insufficient to

7    demonstrate that defendant acted outside the limits of judicial immunity).

8    In response to Defendants' motion, Plaintiff contends that dismissal of his claims against the

9    judges would be premature.  He argues that "[b]efore defendants are dismissed with prejudice the

10   plaintiff is entitled to undertake some investigation to determine the exact nature and any individual

11   involvement by said defendants."  (Opp. at 7).  He argues:

12   
13   
14   

> If the Judges and prosecutors agreed in advance with other Snohomish County defendants, to rule favorably on the outcome of any criminal proceeding, this private, prior agreement to decide in favor of one party is not a judicial act.  Rather, [it] should be considered an administrative, custom, practice and/or unwritten policy.  It is possible that defendant's [sic] personally and *privately* participated in the violations stated in plaintiff's complaint.

15   Id. (emphasis in original).  Plaintiff's arguments simply reveal the conclusory and speculative nature of

16   his claims against the judges.  In any case, the Ninth Circuit has expressly held that "a conspiracy

17   between judge and prosecutor to predetermine the outcome of a judicial proceeding, while clearly

18   improper, nevertheless does not pierce the immunity extended to judges and prosecutors."  Ashelman

19   v. Pope, 793 F.2d 1072, 1078 (9th Cir. 1986).  As such, even accepting as true Plaintiff's allegations

20   that the judges and prosecutors Snohomish County agreed in advance on the outcome of proceedings,

21   such conduct would nonetheless be shielded by the judicial immunity doctrine.

22   Plaintiff also cannot overcome judicial immunity by making conclusory allegations of a

23   conspiracy by judges and claiming the need for discovery to prove such bald allegations.  The Supreme

24   Court has held that "judicial immunity is not overcome by allegations of bad faith or malice, the

25   existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial."

1   Mireles v. Waco, 502 U.S. 9, 11 (1991).  In addition, the Ninth Circuit has held that judicial immunity

2   may not be overcome by allegations that a judge has engaged in a conspiracy.  See S&S Logging Co.

3   v. B.G. Barker, 366 F.2d 617, 621-22 (9th Cir. 1966); see also Johnson v. State of California, 207

4   F.3d 650, 656 (9th Cir. 1999) (upholding district court's dismissal with prejudice of conspiracy

5   allegations that were "quintessentially vague and conclusory"); Woodrum v. Woodward County,

6   Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989) (conclusory allegations of a conspiracy do not

7   support a claim for violation of civil rights under Section 1983).

8            Therefore, the Court grants Defendants' motion to the extent it seeks dismissal of claims

9   against Snohomish County Superior Court judges.  The Court dismisses these claims with prejudice

10  and without leave to amend because it does not appear that Plaintiff can plead any set of facts (as

11  opposed to conclusory allegations) that would overcome the doctrine of judicial immunity.  Therefore,

12  Plaintiff's claims against the following judges are dismissed:  (1) James Allendoerfer; (2) George

13  Bowden; (3) Ronald Castleberry; (4) Kenneth Cowsert; (5) Steven Dwyer; (6) Ellen Fair; (7) Anita

14  Farris; (8) David Hulbert; (9) Gerald Knight; (10) Linda Krese; (11) Larry McKeeman; (12) Joseph

15  Thipodeau; (13) Richard Thorpe; and (14) Thomas Wynne.

16  3.    Prosecutorial Immunity

17           Defendants next seek dismissal of Plaintiff's claims against current Snohomish County

18  Prosecuting Attorney Janice Ellis and former Prosecuting Attorney James Krider.  Defendants argue

19  that claims against these defendants are barred by the doctrine of prosecutorial immunity.

20           Many of Plaintiff's allegations against the prosecutors are the same as his allegations against

21  the judges.  For example, Plaintiff generally alleges that the prosecutors conspired with the judges and

22  others to force criminal defendants to plead guilty and to prevent Plaintiff from accessing the courts.

23  SAC ¶¶ 4.1, 4.7.  More specifically, Plaintiff alleges:

24           [T]he prosecutors intentionally and unlawfully maintained standard practices which include,
             but are not limited to: vindictive and selective prosecution; overcharging; the planned and
25           deceptive withholding of known charges for subsequent prosecution to the accused's

1
2

detriment; standard contravention of Wa.Rev.Code 9.94A.411[1]; destruction and/or tampering with evidence; caseload levels precluding observance of rights of defendants and duties of prosecutors; and, unlawful plea bargaining practices.

3    Id. ¶ 4.5.

4          The Ninth Circuit has held that "[a] state prosecutor is entitled to absolute immunity from

5    liability under § 1983 . . . when he or she engages in activities 'intimately associated with the judicial

6    phase of the criminal process.'" Broam v. Brogan, 320 F.3d 1023, 1028 (9th Cir. 2003).  Here, the

7    allegations in ¶ 4.5 of the SAC regarding the prosecutors' "standard practices" concern activities that

8    are closely associated with the judicial phase of the criminal process. See, e.g., Milstein v. Cooley, 257

9    F.3d 1004, 1008-09 (9th Cir. 2001) (noting that claims of malicious prosecution and suppression of

10   exculpatory evidence are protected by prosecutorial immunity); Ybarra v. Reno Thunderbird Mobile

11   Home Village, 723 F.2d 675, 677-80 (9th Cir. 1984) (prosecutorial immunity applies to destruction of

12   evidence).  In addition, as noted above, prosecutorial immunity applies even in cases where a

13   prosecutor allegedly conspires with a judge predetermine the outcome of a proceeding.  See

14   Ashelman, 793 F.2d at 1078.  As such, these allegations cannot form the basis for claims against the

15   prosecutors.

16         As before, Plaintiff argues that it would be premature to dismiss his claims against the

17   prosecutors.  He contends:

18
19
20
21

[B]efore defendants are dismissed with prejudice the plaintiff is entitled to undertake some investigation to determine the exact nature and any individual involvement by said defendants. Subsequently, facts may develop that defendant prosecutors are personally and directly responsible for the occurrence of the violations set forth in the complaint by facilitating and protecting the in-house policy of creating, implementing and maintaining a system of obstructing and impeding indigent criminal detainees/prisoners in their ability to exercise their right to access the courts, carried out by the maintenance of a legal access scheme at the jail that is so inadequate, imposing, and inaccessible, as to create a barrier between

22

23

24
25

[1] RCW 9.94A.411 provides: "A prosecuting attorney may decline to prosecute, even though technically sufficient evidence to prosecute exists, in situations where prosecution would serve no public purpose, would defeat the underlying purpose of the law in question or would result in decreased respect for the law."

detainees/prisoners and the courts, and by *administrative actions and otherwise acts that fall both in and outside the scope of their duties as government officials possessing immunity.*

(Opp. at 8) (emphasis in original). However, this argument again simply reveals the conclusory and speculative nature of Plaintiff's claims against the prosecutors. Plaintiff cannot overcome the doctrine of prosecutorial immunity simply by making sweeping and conclusory allegations and speculating that "facts may develop" to support such allegations.

Therefore, the Court grants Defendants' motion to the extent it seeks dismissal of Plaintiff's claims against Janice Ellis and James Krider. These claims are dismissed with prejudice and without leave to amend because it does not appear that Plaintiff can plead any set of facts that would overcome the doctrine of prosecutorial immunity.

4.    Mootness

In addition to claims for compensatory and punitive damages, Plaintiff asserts a variety of claims for declaratory relief. Plaintiff seeks a declaratory judgment that his constitutional rights were violated in the following ways: (a) Snohomish County denied him an adequate law library or persons trained in the law; (b) Snohomish County unlawfully retaliated against him for exercising his constitutional rights; (c) SCC and Snohomish County subjected him to overcrowded conditions; (d) SCC and medical director Nancy Gibson failed to provide adequate medical care; (e) SCC placed him in solitary confinement for "exaggerated reasons"; (f) SCC routinely placed him in a holding cell that contained asbestos; (g) SCC delayed or denied him a religious diet; (h) Snohomish County Superior Court and Snohomish County ordered a DNA test; (i) SCC failed to provide an adequate grievance mechanism for him. SAC ¶¶ 6.1A.

Because Plaintiff is no longer a prisoner at SCC and because he is also bringing claims for damages, Defendants argue that his claims for declaratory relief are moot. Defendants point to the Tenth Circuit's decision in Green v. Branson, 108 F.3d 1296 (10th Cir. 1997), where a former prisoner in the Oklahoma correctional system sought to maintain both claims for damages and

1    declaratory relief regarding prison conditions.  The <u>Green</u> court held that the claims for declaratory

2    relief were moot under such circumstances, noting that "[s]ince he is no longer a prisoner within the

3    control of the [Oklahoma Department of Corrections], the entry of a declaratory judgment in Green's

4    favor would amount to nothing more than a declaration that he was wronged, and would have no

5    effect on the defendants' behavior towards him."  <u>Id.</u> at 1300.  The court noted, however, that the

6    plaintiff's "claims for damages would remain viable because a judgment for damages in his favor

7    would alter the defendants' behavior by forcing them to pay an amount of money they otherwise

8    would not have paid."  <u>Id.</u>

9         Similarly, the Ninth Circuit in <u>McQuillion v. Schwarzenegger</u>, 369 F.3d 1091 (9th Cir. 2004),

10   upheld the dismissal of claims for declaratory relief after an inmate was released from prison.  Noting

11   that the plaintiff was seeking damages in addition to declaratory relief, the court stated that

12   "considered in conjunction with his claim for damages, declaratory relief without the possibility of

13   prospective effect would be superfluous."  <u>Id.</u> at 1095.

14        The Court finds that the same principles apply here.  Because Plaintiff is no longer an inmate at

15   the SCC, his claims for declaratory relief are moot.  As in <u>Green</u>, a declaratory judgment would simply

16   declare that Plaintiff was wronged and would have no effect on Defendants' behavior toward him.

17   Furthermore, because Plaintiff is seeking damages for the alleged violations of his constitutional rights,

18   any declaratory judgment would be superfluous.[2]

19   _____

20        [2] Although not discussed by either side, an inmate's suit for declaratory or injunctive relief
     may survive his or her release from prison if the alleged wrongdoing is "capable of repetition, yet
21   evading review."  <u>See</u> <u>McQuillion</u>, 369 F.3d at 1095 n.3.  This exception to the mootness doctrine
     applies when: (1) the duration of the challenged action is too short to be fully litigated prior to its
22   expiration; and (2) there is a reasonable expectation that the plaintiff will be subjected to the same
     injuries again.  <u>Dilley v. Gunn</u>, 64 F.3d 1365, 1369 (9th Cir. 1995).  Here, however, Plaintiff has not
23   demonstrated a reasonable expectation that he will again be detained in the SCC and subjected to the
     same alleged injuries.  Plaintiff will only be detained again at the SCC if he arrested for wrongdoing in
24   Snohomish County.  "Courts are reluctant to invoke this doctrine when the possibility of recurrence
     for the [plaintiff] depends upon his own wrongdoing."  <u>Reimers v. State</u>, 863 F.2d 630, 632 (9th Cir.
25   1988).  Since Plaintiff has not demonstrated a reasonable expectation that he will be detained in the

1    Therefore, Plaintiff's claims for declaratory relief are dismissed as moot and superfluous.  If

2    Plaintiff can prove that his constitutional rights were violated by any of the Defendants, his claims for

3    damages will suffice to address any wrongdoing, making claims for declaratory relief unnecessary.

4    5.    Compliance with Tort Claim Filing Requirements

5        Defendants also contend that Plaintiff's state-law tort claims should be dismissed because

6    Plaintiff did not strictly comply with the tort claim filing requirements of RCW 4.96.010-020 and

7    Snohomish County Code 2.90.050(1).

8        RCW 4.96.020(4) provides that "[n]o action shall be commenced against any local

9    governmental entity for damages arising out of tortious conduct until sixty days have elapsed after the

10   claim has first been presented to and filed with the governing body thereof."  In turn, RCW

11   4.96.020(2) provides that the governing body of each local governmental entity "shall appoint an agent

12   to receive any claim for damages made under this chapter."  Snohomish County Code 2.90.050(1)

13   provides that "[i]n accordance with RCW 4.96.020(2), claims against the county shall be filed with the

14   clerk of the council" and that "[n]o officer, employee or volunteer of the county may waive" the filing

15   requirement.

16       Defendants argue that Plaintiff did not comply with these requirements because he did not file

17   a notice of his tort claim with the clerk of the council.  Instead, Defendants assert that he filed a notice

18   of claim on August 26, 2005 with the Snohomish County Risk Management Division.

19       Defendants note that Washington courts require strict compliance with the tort claim notice

20   requirements of RCW 4.96.020.  "Strict compliance with procedural filing requirements is mandatory,

21   even if the requirements 'seem harsh and technical.'"  Burnett v. Tacoma City Light, 124 Wn. App.

22   550, 558 (2004).  "Failure to comply with a notice of claim statute results in dismissal of the suit."  Id.

23   For example, the court in Burnett dismissed a tort claim because the plaintiffs filed notice of their tort

24   

25   SCC again, the "capable of repetition, yet evading review" exception is not met.

1    claims against the city of Tacoma with the City Attorney's office, rather than with the City Clerk's

2    office as required by local ordinance. Id. at 558. The court noted that even if the city had actual

3    knowledge of the claim after it was filed with the City Attorney's office, the plaintiffs' "failure to file

4    with the Clerk's Office, as the ordinance directs, precludes their subsequent lawsuit against the City."

5    Id. at 559.

6        In response, Plaintiff does not dispute that he failed to comply strictly with the tort claim filing

7    requirements. Instead, he contends that Defendants have waived this defense. To support his waiver

8    argument, Plaintiff argues: (1) Defendants did not raise this defense when they moved to dismiss

9    Plaintiff's prior complaint in C03-3431C for failure to effect service of process in a timely manner; (2)

10   Defendants did not raise this defense when they moved to dismiss Plaintiff's class allegations in this

11   action; and (3) Defendants did not raise this defense when they filed their notice of appearance in this

12   action.

13       Plaintiff's waiver arguments are not persuasive. "[A] defendant may waive an affirmative

14   defense if either (1) assertion of the defense is inconsistent with defendant's prior behavior or (2) the

15   defendant has been dilatory in asserting the defense." King v. Snohomish County, 146 Wn.2d 420,

16   424 (2002). Here, Defendants have not been dilatory in raising this defense, nor has their conduct

17   been inconsistent with an intent to assert this defense. First, there was no reason for Defendants to

18   raise this defense when they moved to dismiss Plaintiff's complaint in C03-3431C, since they simply

19   moved to dismiss that complaint for failure to effect service of process in a timely manner. Second,

20   Defendants were not obliged to raise this defense when they sought dismissal of the class allegations in

21   Plaintiff's earlier complaint in this matter, since that motion was not directed at Plaintiff's individual

22   state-law tort claims. Finally, a notice of appearance is not a responsive pleading in which a defendant

23   is obliged to raise any defenses.

24       Therefore, the Court dismisses Plaintiff's state-law tort claims without prejudice for failure to

25   comply with the requirements of RCW 4.96.020 and Snohomish County Code 2.90.050(1). Plaintiff is

ORDER - 13

1   advised that dismissal of the state-law tort claims does not affect his federal claims under Section

2   1983, since a plaintiff is not required to exhaust state tort claim procedures to maintain a Section 1983

3   claim.  See Wisenbaker v. Farwell, 341 F. Supp.2d 1160, 1169 (D. Nev. 2004).

4   6.      Claims Regarding DNA Collection Statute

5          Plaintiff also challenges the constitutionality of RCW 43.43.754, a Washington statute that

6   requires a biological sample for DNA identification analysis to be collected from every person

7   convicted of a felony.  Plaintiff alleges that he was ordered by the Snohomish County Superior Court

8   to provide such a sample and that "[t]he collection and testing of such a sample whether by blood

9   draw or cheek swab is a search and violated the plaintiff's rights pursuant to the Fourth Amendment."

10  SAC ¶ 4.43.

11         Every state in the country, as well as the federal government, has adopted a DNA collection

12  statute.  See Green v. Berge, 354 F.3d 675, 676 (7th Cir. 2004)  As a result, the constitutionality of

13  collecting biological samples from convicted criminals has been extensively litigated in state and

14  federal courts throughout the country.  Virtually every DNA collection statute has been upheld against

15  Fourth Amendment challenges.  See United States v. Kincade, 379 F.3d 813, 830-31 (9th Cir. 2004)

16  (collecting cases); Green, 354 F.3d at 677 (noting that state and federal courts that have addressed

17  validity of DNA collection statutes "are almost unanimous in holding that these statutes do not violate

18  the Fourth Amendment").

19         Defendants note that the constitutionality of Washington's DNA collection statute has been

20  upheld by a federal court.  See Ryncarz v. Eikenberry, 824 F. Supp. 1493 (E.D. Wash. 1993).  The

21  court in Ryncarz held that RCW 43.43.754 is "is facially valid" and that "to the extent plaintiff claims

22  that the statute is invalid on Fourth Amendment Grounds, his complaint must be dismissed."  Id. at

23  1499.  The statute has also been upheld by the Washington Supreme Court against challenges that the

24  law authorizes illegal searches or seizures under the state and federal constitutions.  See State v.

25  Olivas, 122 Wn.2d 73 (1993).

ORDER - 14

1        Nonetheless, Plaintiff suggests that recent Supreme Court decisions in City of Indianapolis v.

2   Edmond, 531 U.S. 32 (2000), Ferguson v. City of Charleston, 532 U.S. 67 (2001), and Illinois v.

3   Lidster, 540 U.S. 419 (2004), have nullified earlier rulings that upheld the constitutionality of

4   Washington's DNA collection statute.  Each of these cases involved the permissibility of searches

5   under the Fourth Amendment, although none of them concerned DNA collections statues.

6        However, courts in Washington and throughout the country have continued to affirm the

7   constitutionality of DNA collection statutes in light of these Supreme Court's decisions.  For example,

8   the Ninth Circuit recently upheld the constitutionality of a federal DNA statute in United States v.

9   Kincade, 379 F.3d 813 (9th Cir. 2004) (en banc).  The Second and Seventh Circuits also recently

10  issued decisions upholding similar statutes.  See Nicholas v. Goord, 430 F.3d 652 (2d Cir. 2005);

11  Green v. Berge, 354 F.3d 675 (7th Cir. 2004).  In addition, the Washington Court of Appeals has

12  upheld RCW 43.43.754 against a Fourth Amendment challenge brought after the Supreme Court's

13  decisions in Ferguson, Edmond, and Lidster.  See State v. Surge, 122 Wn. App. 448 (2004).

14       In short, Plaintiff's challenge to the constitutionality of RCW 43.43.754 is a claim that has

15  been unsuccessfully litigated by other plaintiffs in Washington and throughout the country.  Given the

16  large body of case law affirming the constitutionality of RCW 43.43.754 and similar DNA collection

17  statutes, Plaintiff's facial challenge to the statute is dismissed with prejudice.

18  7.    Claims Against Defendants Reardon, Thompson, Bly, and Gibson

19       Finally, Defendants seek dismissal of all claims against Aaron Reardon (the Snohomish County

20  Executive); Steve Thompson (director of the jail); Chris Bly (whom plaintiff alleges was a jail captain);

21  and Nancy Gibson (whom Plaintiff alleges was supervisor of the SCC medical department).  Plaintiff

22  seeks to sue these individuals in both their individual and official capacities.  SAC ¶¶ 3.3, 3.7, 3.8, 3.9.

23       Defendants argue that claims against these persons must be dismissed because Plaintiff has not

24  alleged any facts showing that these individuals had personal knowledge or involvement in any of the

25

ORDER - 15

1    asserted constitutional violations.  In their reply brief, Defendants also assert for the first time that

2    Plaintiff cannot sue these individuals in their official capacity.

3           a.      Official Capacity Claims

4           Defendants are incorrect when they claim that county officials may not be sued in their official

5    capacities under Section 1983.  The Ninth Circuit has noted that "[l]ocal government officials may be

6    liable in their official capacities under § 1983 where their 'action pursuant to official municipal policy

7    of some nature caused a constitutional tort.'"  Butler v. Elle, 281 F.3d 1014, 1026 n.9 (9th Cir. 2002).

8    See also Ceballos v. Garcetti, 361 F.3d 1168, 1183 n.11 (9th Cir. 2004) (noting that local government

9    officials, but not state officials, may be sued in their official capacities under Section 1983); see

10   generally Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 690 n.55 ("local

11   government officials sued in their official capacities are 'persons' [subject to suit] under § 1983 in

12   those cases in which . . . a local government would be suable in its own name").

13          As a result, Plaintiff is not foreclosed as a matter of law from maintaining a suit against county

14   officials in their official capacity.  In addition, Defendants have not raised any argument for the

15   dismissal of Plaintiffs' official capacity claims against Mr. Reardon, Mr. Thompson, Mr. Bly, and Ms.

16   Gibson, aside from their incorrect contention that county officials cannot be sued in their official

17   capacities.  Therefore, the Court denies Defendants' request to dismiss claims brought against

18   Defendants Reardon, Thompson, Bly, or Gibson in their official capacities.

19          b.      Individual Capacity Claims

20          Defendants also argue that claims against Mr. Reardon, Mr. Thompson, Mr. Bly, and Ms.

21   Gibson in their individual capacities should be dismissed.  Defendants note that Plaintiff has not alleged

22   that any of these Defendants were personally involved in the alleged deprivation of his constitutional

23   rights.  In addition, Defendants cite the well-established rule that a supervisor may not be liable under

24   Section 1983 for the actions of his or her subordinates under a theory of vicarious liability.  See

25   Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989).

1    However, a supervisor may be liable under § 1983 if there "exists either '(1) his or her personal

2    involvement in the constitutional deprivation, or (2) a sufficient causal connection between the

3    supervisor's wrongful conduct and the constitutional violation.'" Jeffers v. Gomez, 267 F.3d 895, 915

4    (9th Cir. 2001) (emphasis in original) (internal citations omitted).  The Ninth Circuit has noted that

5    "[s]upervisory liability exists even without overt personal participation in the offensive act if

6    supervisory officials implement a policy so deficient that the policy 'itself is a repudiation of

7    constitutional rights' and is 'the moving force of the constitutional violation.'"  Hansen, 885 F.2d at

8    646.  The Ninth Circuit has also noted that "[a] supervisor can be liable under § 1983 if he 'set[s] in

9    motion a series of acts by others . . . , which he knew or reasonably should have known, would cause

10   others to inflict the constitutional injury.'"  Motley v. Parks, 432 F.3d 1072, 1081 (9th Cir. 2005).  In

11   addition, as Plaintiff notes:

12         Supervisory liability is imposed against a supervisory official in his individual capacity for his
           "own culpable action or inaction in the training, supervision, or control of his subordinates,"
13         for his 'acquiesce[nce] in the constitutional deprivations of which [the] complaint is made,'" or
           for conduct that showed a "'reckless or callous indifference to the rights of others.'"
14

15   Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991).  As such, a supervisor may in some

16   circumstances be subject to suit in his or her individual capacity under Section 1983.

17         Here, however, Plaintiff's second amended complaint does not adequately allege a causal

18   connection between the conduct of Mr. Reardon, Mr. Thompson, Mr. Bly, and Ms. Gibson and the

19   alleged constitutional violations.  Plaintiff generally alleges that these individuals had supervisory

20   and/or policy-making decisional authority regarding the prison and claims that these individuals are

21   responsible for the actions of their subordinates.  See SAC ¶¶ 3.3, 3.7, 3.8, 3.9.  Such general

22   allegations are not sufficient to state a claim against these Defendants in their individual capacities

23   under Section 1983.  Therefore, Plaintiffs' claims against these Defendants in their individual

24   capacities are subject to dismissal.

25

1    Nonetheless, the Court finds that Plaintiff should be granted leave to amend his complaint with

2    respect to his claims against these Defendants in their individual capacities.  "[A] district court should

3    grant leave to amend even if no request to amend the pleading was made, unless it determines that the

4    pleading could not possibly be cured by the allegation of other facts."  Doe v. United States, 58 F.3d

5    494, 497 (9th Cir. 1995).  Here, it appears possible that Plaintiff could cure the defects in his

6    individual capacity claims against Defendants Reardon, Thompson, Bly, and Gibson by providing more

7    specific allegations regarding a causal connection between the alleged actions of these Defendants and

8    Plaintiff's alleged constitutional injuries.

9    Therefore, the Court grants Plaintiff leave to amend his complaint with respect to his claims

10   against Defendants Reardon, Thompson, Bly, and Gibson in their individual capacities.  Plaintiff is

11   advised that he is only granted leave provide more specific allegations with respect to his individual

12   capacity claims against these four defendants.  Plaintiff is not granted leave to add any new defendants

13   or claims.  Any amended complaint must be filed within 30 days of the date of this order.

14                                            **Conclusion**

15   Defendants' motion to dismiss is GRANTED in part and DENIED in part.  The Court grants

16   Defendants' motion to the extent it seeks dismissal of:  (1) Claims against judges and prosecuting

17   attorneys; (2) Plaintiff's claims for declaratory relief; (3) Plaintiff's state-law tort claims; (4) Plaintiff's

18   challenge to the constitutionality of RCW 43.43.754; (5) Plaintiff's claims against Defendants Aaron

19   Reardon, Steve Thompson, Chris Bly, and Nancy Gibson to the extent they are sued in their individual

20   capacities.  Plaintiff is granted leave to amend his complaint solely to the extent that Plaintiff seeks to

21   bring claims against Defendants Reardon, Thompson, Bly, and Gibson in their individual capacities.

22   Any amended complaint must be filed and served no later than 30 days of the date of this order.  The

23   Court denies Defendants' motion to the extent it seeks dismissal of:  (1) claims for unconstitutional

24   conditions of confinement; and (2) claims against county officials in their official capacities.

25

ORDER - 18

1    Consistent with this order, the following Defendants are DISMISSED from this action:  (1)

2    James Allendoerfer; (2) George Bowden; (3) Ronald Castleberry; (4) Kenneth Cowsert; (5) Steven

3    Dwyer; (6) Janice Ellis; (7) Ellen Fair; (8) Anita Farris; (9) David Hulbert; (10) Gerald Knight; (11)

4    Linda Krese; (12) James Krider; (13) Larry McKeeman; (14) Joseph Thipodeau; (15) Richard Thorpe;

5    and (16) Thomas Wynne.

6    The Court further directs the parties to submit a joint status report to the Court no later than

7    March 28, 2006.  The joint status report must address the issues listed in the Court's original order

8    directing the parties to submit this report.  See Dkt. No. 5. No further extensions to the filing of the

9    joint status report will be granted.

10   The clerk is directed to provide copies of this order to Plaintiff and to all counsel of record.

11   Dated:   March 17, 2006.

12                                              s/Marsha J. Pechman
                                                Marsha J. Pechman
13                                              United States District Judge

ORDER - 19